**GRIFFIN HAMERSKY LLP**
420 Lexington Avenue, Suite 400
New York, New York 10170
Telephone: (646) 998-5580
Facsimile: (646) 998-8284
Scott A. Griffin
Michael D. Hamersky

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
Telephone: (702) 382-2101
Facsimile: (702) 382-8135
Frank M. Flansburg III
(*Pro Hac Vice Admission*)
Maximilien D. Fetaz
(*Pro Hac Vice Admission*)

*Attorneys for Harrah's Atlantic City
Operating Company LLC d/b/a Harrah's
Resort Atlantic City*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

In re:

JVJ PHARMACY INC. D/B/A UNIVERSITY
CHEMISTS

                         Debtor.

-------------------------------------------------------------------x

SALVATORE LAMONICA, AS CHAPTER 7
TRUSTEE OF THE ESTATE OF JVJ PHARMACY
INC. D/B/A UNIVERSITY CHEMISTS,

                                        Plaintiff,

                  -against-

HARRAH'S ATLANTIC CITY OPERATING
COMPANY LLC D/B/A HARRAH'S RESORT
ATLANTIC CITY,

                         Defendant.

-------------------------------------------------------------------x

Chapter 7
Case No. 16-10508 (SMB)

Adv. Pro. No. 18-01853 (SMB)

**HARRAH'S ATLANTIC CITY
OPERATING COMPANY LLC
D/B/A HARRAH'S RESORT
ATLANTIC CITY'S
MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page(s)**

I.     INTRODUCTION. ........................................................................................................ 1

II.    FACTUAL BACKGROUND. .................................................................................... 2

III.   LEGAL STANDARD. ................................................................................................ 3

IV.    LEGAL ARGUMENT. ............................................................................................... 5

    A.     The New York Law Claims Fail. ..................................................................... 5

        1.     Federal Law Prevents the Assertion of New York Statutory Law
              Against a New Jersey Casino. .................................................................. 5

        2.     Choice of Law Principles Conclude that New Jersey Statutes
              Control the Purported Transfers. .......................................................... 6

            a.     Conflict Between New York and New Jersey Law. ..................... 7

            b.     Choice of Law Determination. ..................................................... 8

    B.     Debtor's Funds Were Not Transferred to Harrah's. ....................................... 9

        1.     The Transaction. ...................................................................................... 9

        2.     Harrah's Never Received the Debtor's Funds. ..................................... 11

        3.     Harrah's Is Not a Transferee. ................................................................ 13

    C.     If a Transferee, Harrah's Was a Good Faith Subsequent Transferee. ............... 13

        1.     Harrah's Did Not Have Control Over Debtor's Funds. .......................... 14

        2.     Harrah's Acted in Good Faith. .............................................................. 15

    D.     No Evidence Exists to Support the Necessary Element of Intent in the First
        and Sixth Claims for Relief. ........................................................................... 18

        1.     No Facts Exist to Establish there was Inadequate Consideration. .......... 20

        2.     Debtor and Harrah's Did Not Enjoy a Close Relationship. ................... 20

        3.     Any Purported Transfers Were Made in the Ordinary Course of
            Business. ................................................................................................. 21

        4.     Any Purported Transfer Was Not Made in Secret. ................................. 21

    E.     The Debtor Received Fair Consideration and Reasonably Equivalent
        Value. .............................................................................................................. 22

        1.     Debtor Received the Fair Market Value of the Cash Advances. ............. 24

        2.     Debtor and Harrah's Enjoyed an Arm's-Length Relationship. .............. 26

        3.     Harrah's Acted in Good Faith. .............................................................. 27

    F.     The Trustee Cannot Establish the Necessary Elements of Unjust
        Enrichment. .................................................................................................... 27

V.     CONCLUSION. ........................................................................................................ 29

20536745.2

**Page(s)**

**Cases**

*Acequia, Inc. v. Clinton (In re Acequia, Inc.)*,
    34 F.3d 800 (9th Cir. 1994) ................................................................................................19

*In re Akanmu*,
    502 B.R. 124 (Bankr. E.D.N.Y. 2013) ...........................................................................28

*Allard v. Flamingo Hilton (In re Chomakos)*,
    69 F.3d 769 (6th Cir. 1995) ..............................................................................................26

*Matter of Allstate Ins. Co. (Stolarz)*,
    613 N.E.2d 936 (N.Y. 1993) ...............................................................................................7

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .......................................................................................................3, 4

*Assocs. Commercial Corp. v. Wallia*,
    511 A.2d 709 (N.J. App. Div. 1986) ................................................................................28

*Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortgage Inv. Corp.)*,
    256 B.R. 664 (Bankr. S.D.N.Y. 2000) ............................................................................22

*Bigelow v. Virginia*,
    421 U.S. 809 (1975) ...........................................................................................................5

*Bohm v. Dolata (In re Dolata)*,
    306 B.R. 97 (Bankr. W.D. Pa. 2004)................................................................................26

*Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*,
    373 F.3d 296 (2d Cir. 2004) ............................................................................................28

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ...........................................................................................................3

*In re Circuit All., Inc.*,
    228 B.R. 225 (Bankr. D. Minn. 1998)..............................................................................15

*In re Custom Contractors, LLC*,
    745 F.3d 1342 (11th Cir. 2014) .........................................................................................4

*D'Amico v. City of N.Y.*,
    132 F.3d 145 (2d Cir.1998) ...............................................................................................4

*In re Equip. Acquisition Res., Inc.*,
    803 F.3d 835 (7th Cir. 2015) ...........................................................................................17

*Geron v. Robinson & Cole LLP*,
476 B.R. 732 (S.D.N.Y. 2012), *aff'd sub nom. In re Thelen LLP*, 762 F.3d
157 (2d Cir. 2014) ...........................................................................................9

*Global Net Financial.Com, Inc. v. Frank Crystal & Co.*,
449 F.3d 377 (2d Cir. 2006) .........................................................................6, 8

*In re Gonzalez*,
342 B.R. 165 (Bankr. S.D.N.Y. 2006) ...........................................................24

*Goshen v. Mut. Life Ins. Co. of New York*,
774 N.E.2d 1190 (N.Y.2d 2002) .......................................................................6

*Guitierrez v. Lomas Mortgage (In re Gutierrez)*,
160 B.R. 788 (Bankr. W.D. Tex. 1993) ..........................................................25

*Hettinger v. Kleinman*,
733 F. Supp. 2d 421 (S.D.N.Y. 2010) .............................................................27

*Huntington v. Attrill*,
146 U.S. 657 (1892) ...........................................................................................5

*Kerzer v. Kingly Mfg.*,
156 F.3d 396 (2d Cir. 1998) ..............................................................................4

*Krisher v. Monarch Mach. Tool Co.*,
1994 WL 705264 (N.D.N.Y. 1994) .................................................................19

*Lippe v. Bairnco Corp.*,
249 F. Supp. 2d 357 (S.D.N.Y. 2003), aff'd, 99 F. App'x 274 (2d Cir. 2004) ..............19, 20

*Magnolia Petroleum Co. v. Hunt*,
320 U.S. 430 (1943) ...........................................................................................5

*Mayer v. Bishop*,
158 A.D.2d 878 (N.Y.S. 1990) .........................................................................28

*MK Strategies, LLC v. Ann Taylor Stores Corp.*,
567 F.Supp.2d 729, 733–34 (D.N.J.2008) ......................................................27

*In re Mercury Companies, Inc.*,
527 B.R. 438 (D. Colo. 2015) ..........................................................................24

*In re Nat'l Audit Def. Network*,
332 B.R. 896 (Bankr. D. Nev. 2005) ...............................................................13

*Official Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp. (In
re Verestar, Inc.)*,
343 B.R. 444 (Bankr. S.D.N.Y. 2006) ..............................................................9

20536745.2

*Padula v. Lilarn Properties Corp.*,
    644 N.E.2d 1001 (N.Y. 1994) ...................................................................................8

*Pergament as Tr. of Estate of Barkany v. Marina Dist. Dev. Co., LLC*,
    14 CV 2602, 2018 WL 5018654 (E.D.N.Y. Oct. 15, 2018).................................23

*Pergament v. Brooklyn Law Sch.*,
    595 B.R. 6 (E.D.N.Y. 2019) ...................................................................................14

*RCM Tech., Inc. v. Constr. Servs. Assocs., Inc.*,
    149 F.Supp.2d 109, 114 (D.N.J.2001) ...................................................................27

*Roselink Inv'rs, L.L.C. v. Shenkman*,
    386 F. Supp. 2d 209 (S.D.N.Y. 2004) .....................................................................8

*Schaps v. Just Enough Corp. (In re Pinto Trucking Service, Inc.)*,
    93 B.R. 379 (Bankr. E.D. Pa. 1988) ......................................................................24

*Seidle v. Van de Grift (In re 18th Ave. Development Corp.)*,
    18 B.R. 904 (Bankr. S.D. Fla. 1982) .....................................................................24

*Sherman v. First City Bank* .........................................................................................13

*In re Sherman*,
    67 F.3d 1348 (8th Cir. 1995) .................................................................................15

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003) .................................................................................................6

*Taberna Preferred Funding II, Ltd. v. Advance Realty Grp. LLC*,
    5 N.Y.S.3d 330 (N.Y. Sup. Ct. 2014)......................................................................7

*Taylor v. List*,
    880 F.2d 1040 (9th Cir. 1989) .................................................................................3

*In re Thelen LLP*,
    736 F.3d 213 (2d Cir. 2013) ....................................................................................6

*In re United Sciences of Am., Inc.*,
    893 F.2d 720 (5th Cir.1990) ..................................................................................13

*Van Iderstine v. Nat'l Disc. Co.*,
    227 U.S. 575 (1913) ...............................................................................................18

*In re Warnaco Grp., Inc.*,
    No. 01 B 41643 (RLB), 2006 WL 278152 (S.D.N.Y. Feb. 2, 2006) ...................14

**Statutes**

11 U.S.C. § 101(54)(D) ...............................................................................................9

11 U.S.C. § 548(a)(1)(A) ..................................................................................18

11 U.S.C. § 548(a)(1)(B)(ii) .............................................................................23

11 U.S.C. § 548(d)(2)(A) ..................................................................................24

11 U.S.C. § 550(b) ............................................................................................13

N.J. Stat. § 25:2-20 ............................................................................................7

N.J. Stat. § 25:2-25 ............................................................................................7

N.J. Stat. § 25:2-27 ............................................................................................7

N.Y. Debt. & Cred. Law § 272 .........................................................................23

N.Y. Debt. & Cred. Law § 272(a) ......................................................................7

N.Y. Debt. & Cred. Law § 273 ..........................................................5, 7, 22, 23

N.Y. Debt. & Cred. Law §§ 273-75 ...................................................................7

N.Y. Debt. & Cred. Law § 274 ...............................................................5, 22, 23

N.Y. Debt. & Cred. Law § 275 ...............................................................5, 22, 23

N.Y. Debt. & Cred. Law § 276 ...........................................................5, 7, 18, 19

**Rules**

Fed. R. Civ. P. 56 ...........................................................................................1, 3

Fed. R. Civ. P. 56(a) ..........................................................................................3

Federal Rules of Bankruptcy Procedure Rule 7056 ...........................................1

Local Bankruptcy Rule 1001-1(a) ......................................................................2

Local Bankruptcy Rule 7056-1(b) ......................................................................2

**HARRAH'S ATLANTIC CITY OPERATING COMPANY LLC
D/B/A HARRAH'S RESORT ATLANTIC CITY'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Harrah's Atlantic City Operating Company LLC d/b/a Harrah's Resort Atlantic City (referred to herein as "**Harrah's**" or the "**Defendant**"), by and through its attorneys of record, Griffin Hamersky LLP and Brownstein Hyatt Farber Schreck, LLP, hereby submits its Motion for Summary Judgment (the "**Motion**") against Salvatore LaMonica, Chapter 7 Trustee (referred to herein as the "**Trustee**" or the "**Plaintiff**") in the above-captioned adversary proceeding on all claims for relief set forth in the amended complaint (the "**Complaint**") filed on June 7, 2019 [Dkt. No. 25]. Harrah's respectfully requests this Court enter an order granting summary judgment on the grounds that there are no genuine issues of material fact in dispute regarding any of the claims set forth in the Complaint.

This Motion is made and based on Rule 56 of the Federal Rules of Civil Procedure (the "**Federal Rules**"), as made applicable to this adversary proceeding pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the points and authorities which follow; the Joint Statement of Undisputed Facts in Support of Cross-Motions for Summary Judgment, and exhibits attached thereto, filed herein on February 28, 2020 [Dkt. No. 48], the pleadings and papers and other records contained in the Court's docket, and any evidence or oral argument presented at the time of the hearing on this matter.

## I. INTRODUCTION.

1. Summary judgment should be granted in Harrah's favor. The purported transfers outlined in the Complaint were simply cash advances the Debtor JVJ Pharmacy Inc. d/b/a University Chemists' (the "**Debtor**") principal and president, James F. Zambri ("**Zambri**"), initiated and were approved by the independent processing company, Global Cash Access, Inc. ("**Global Payments**"), at an automated teller machine ("**ATM**") owned by Ultron Processing Inc. ("**Ultron**") located at Harrah's New Jersey property that Harrah's was

1

contractually obligated to honor pursuant to its contract with Global Payments. Global Payments' approved funds (i) were not paid to Harrah's, (ii) were not paid for an antecedent debt, and (iii) were not related to any debt owed to Harrah's. Indeed, Harrah's was not a transferee - a necessary element of all the claims. The totality of the undisputed facts demonstrates that no funds were transferred from the Debtor to Harrah's. Harrah's served as a mere conduit contractually obligated to deliver funds authorized by Global Payments through Ultron's ATM as requested by the Debtor's President.

2. A plain reading of the pertinent bank statements, accounting documents, and record developed in discovery reveals that not only were Defendant's actions permissible and unobjectionable, Harrah's served as nothing more than the location at which the Debtor's President initiated cash advances approved by Global Payments. Harrah's exchanged its own funds for Global Payments' approved receipt dispensed to Zambri by Ultron's ATM. Based on the undisputed facts, entry of summary judgment in favor of Harrah's is warranted.

## II. FACTUAL BACKGROUND.

3. Rule 7056-1 of the Local Bankruptcy Rules for the Southern District of New York requires that, "[u]pon any motion for summary judgment pursuant to Bankruptcy Rule 7056, there shall be annexed to the motion a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Bankruptcy Rule 7056-1(b).[1] Accordingly, the parties filed a Joint Statement of Undisputed Facts in Support of Cross-Motions for Summary Judgment ("**SOF**")[2] on February 28, 2020, which are dispositive of each allegation in the Complaint.

---

[1]    Rule 1001-1 of the Local Bankruptcy Rules provides that, "[t]hese rules shall be known and cited as the 'Local Bankruptcy Rules.'" Local Bankruptcy Rule 1001-1(a).

[2]    Capitalized terms not otherwise defined herein shall have those meanings ascribed to them in the SOF in support of this Motion.

Harrah's incorporates in full and cites to the SOF herein.

## III.    <u>LEGAL STANDARD.</u>

4.    Rule 56 of the Federal Rules provides for summary judgment on a claim when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The substantive law determines which facts are material for purposes of summary judgment, and disputes over facts that are irrelevant or unnecessary will not be counted. *Liberty Lobby, Inc.*, 477 U.S. at 248.

5.    A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ P. 56.  Where the non-moving party bears the burden of proving the claim or defense, the moving party may meet its burden by (1) presenting evidence that negates an essential element of the claim, or (2) demonstrating that the non-moving party did not produce sufficient evidence to establish an essential element of the claim.  *See id.* at 323-24; *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Indeed, summary judgment is appropriate where "[t]here is no genuine issue of material fact if the party opposing the motion 'fails to make an adequate showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Taylor*, 880 F.2d at 1045 (quoting *Celotex Corp.*, 477 U.S. 317, 322 (1986)).

6.    Once the party bearing the burden of proof presents evidence that would entitle the movant to judgment at trial, the burden shifts to the non-moving party to establish a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 322.  To show a genuine dispute, the nonmoving party must provide "hard evidence" from which a reasonable inference in its favor

20536745.2

may be drawn." *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir.1998). The non-moving party may not rest on "the mere allegations or denials of his pleading, but [. . .] must set forth specific facts showing that there is a genuine issue for trial," i.e., that the evidence is such that a rational trier of fact could return a verdict for the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 248, 251-52. "Conclusory allegations, conjecture, and speculation," as well as the existence of a mere, "scintilla of evidence in support of the [nonmoving party's] position," are insufficient to create a genuinely disputed fact. *Liberty Lobby, Inc.*, 477 U.S. at 252; *see also Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

7.    No genuine issues of material fact exist with respect to the characterization of Zambri's cash advances approved by Global Payments at Ultron's ATM as avoidable transfers to Harrah's. The undisputed facts reveal that the cash advance process does not substantively involve Harrah's: (i) Ultron owns the ATM;[3] (ii) Ultron's ATM serves as the platform from which to initiate a cash advance;[4] (iii) Global Payments requests approval from the bank for the advance;[5] (iv) Global Payments receives the bank's approval;[6] (v) Global Payments approves the cash advance at the Ultron ATM;[7] (vi) Ultron's ATM dispenses a receipt evidencing Global Payments' authorization for the advance;[8] and (vii) Global Payments' contract requires that its approved receipt may be redeemed for Harrah's cash.[9] As such, Harrah's is entitled to the summary judgment requested by this Motion.

-----------------------

[3]     SOF at ¶8.

[4]     SOF at ¶¶17, 20-23.

[5]     SOF at ¶63.

[6]     SOF at ¶63.

[7]     SOF at ¶62.

[8]     SOF at ¶¶55-58.

[9]     SOF at ¶¶33-34, 48, 64.

4

## IV.     LEGAL ARGUMENT.

8.      Summary judgment should be entered in Harrah's favor because (A) New York law does not apply, (B) Debtor's funds were not transferred to Harrah's, (C) Harrah's served as a mere conduit, (D) no evidence exists to support the necessary element of intent, (E) Debtor received fair consideration and reasonably equivalent value, and (F) Harrah's was not unjustly enriched. The undisputed facts and relevant case law support judgment in Harrah's favor on all of the claims.

### A.     The New York Law Claims Fail.

9.      The New York state law claims fail because Harrah's is not bound by New York law.[10] Under both federal law and choice-of-law principles, the New York statutory law cannot be asserted against Harrah's. Accordingly, judgment in Harrah's' favor is appropriate.

### 1.     Federal Law Prevents the Assertion of New York Statutory Law Against a New Jersey Casino.

10.     It is well established that "[l]aws have no force of themselves beyond the jurisdiction of the state which enacts them, and can have extraterritorial effect only by the comity of other states." *Huntington v. Attrill*, 146 U.S. 657, 669 (1892); *Magnolia Petroleum Co. v. Hunt*, 320 U.S. 430, 436 (1943) (noting that "each of the states of the Union has constitutional authority to make its own law with respect to persons and events within its borders"). *Cf. Bigelow v. Virginia*, 421 U.S. 809, 824 (1975) ("A State does not acquire power or supervision over the internal affairs of another State merely because the welfare and health of its own citizens may be affected when they travel to that State.").

/ / /

/ / /

---

[10]     The Trustee's state law claims arise under New York Debtor and Creditor Law ("**DCL**") Sections 273, 274, 275, and 276.

20536745.2

11.     Here, the Complaint asserts New York statutory causes of action against a New Jersey limited liability company for purported transfers that took place in New Jersey.[11]  New York law cannot extend to Harrah's in an attempt to regulate and punish an entity and actions occurring outside of its borders.  Doing so would invade the right of New Jersey to regulate its citizens and the conduct happening within the State.  *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003) ("A basic principle of federalism is that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders, and each State alone can determine what measure of punishment, if any, to impose on a defendant who acts within its jurisdiction."); *Goshen v. Mut. Life Ins. Co. of New York*, 774 N.E.2d 1190, 1196 (N.Y.2d 2002) (rejecting application of New York's consumer fraud statute to "out-of-state transactions" because it "would lead to an unwarranted expansive reading of the statute, contrary to legislative intent, and potentially leading to the nationwide, if not global application" of the statute and "would tread on the ability of other states to regulate their own markets and enforce their own consumer protection laws").  Accordingly, the third, fourth, fifth, and sixth cause of action necessarily fail because New York statutory law cannot be applied against a New Jersey resident for purported New Jersey transactions.

### 2.     Choice of Law Principles Conclude that New Jersey Statutes Control the Purported Transfers.

12.     Even if Harrah's is subject to New York law (which it is not), choice of law principles lead to only one conclusion: New Jersey law controls the purported transfers (if any) in this action.  "'[W]here no significant federal policy, calling for the imposition of a federal conflicts rule, exists,' a bankruptcy court must apply the choice of law rules of the forum state." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013) (citations omitted); *Global Net*

---

[11]     *See generally* Dkt. No. 25.

*Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 382 (2d Cir. 2006) ("A federal court exercising diversity jurisdiction must apply the choice of law analysis of the forum state.").

### a. Conflict Between New York and New Jersey Law.

13. Under New York choice of law principles, "[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *Matter of Allstate Ins. Co. (Stolarz)*, 613 N.E.2d 936, 937 (N.Y. 1993). New York and New Jersey are the two jurisdictions at issue here. New Jersey has adopted the Uniform Fraudulent Transfer Act ("UFTA"), whereas New York has adopted the Uniform Fraudulent Conveyance Act ("UFCA"). N.J. Stat. § 25:2-20. Both statutory schemes contain claims for actual and constructive fraudulent transfers, which have been asserted. *Compare, e.g.*, DCL § 276 *with* N.J. Stat. § 25:2-25 (actual intent to defraud); DCL § 273 *with* N.J. Stat. § 25:2-27 (constructive fraud transfer where debtor is rendered insolvent).

14. However, New York law is broader than New Jersey's law. Under New York law, constructive fraud can be established through a variety of transfers *if* the transfer is made "without fair consideration." DCL §§ 273-75. "Fair consideration is given for property, or obligation, when in exchange ... as a fair equivalent thereof, *and in good faith*, property is conveyed or an antecedent debt is satisfied." DCL § 272(a) (emphasis added). Stated differently, "'under New York law, any transfer that would have been constructively fraudulent if it had not been made for fair value can alternatively be avoided if it was not made in 'good faith', which 'is required of both the transferor and the transferee, and ... is lacking when there is a failure to deal honestly, fairly, and openly.'" *Taberna Preferred Funding II, Ltd. v. Advance Realty Grp. LLC*, 5 N.Y.S.3d 330 (N.Y. Sup. Ct. 2014) (citations omitted).

/ / /

7

15.     New Jersey, on the other hand, "only allows the avoidance of 'insider' transfers in satisfaction of an antecedent debt made while the debtor is already insolvent." *Id.* As a result, "New York law potentially allows a much broader set of for-value transactions to be deemed constructive fraudulent conveyances, and the transfer would be set aside without any showing as to the transferor's intent." *Id.* This distinction is relevant to the array of statutory fraudulent transfer claims, creating a conflict between New Jersey and New York law.

### b.     Choice of Law Determination.

16.     Because a potential conflict exists, New York choice of law principles apply as the forum state.  New York's choice-of-law rules employ an interest analysis to determine what state law applies to actions sounding in tort.  *Global Net Financial.Com, Inc.*, 449 F.3d at 384. New York courts will undertake a two-pronged inquiry in order to determine: "(1) what are the significant contacts and in which jurisdiction are they located; and, (2) whether the purpose of the law [at issue] is to regulate conduct or allocate loss." *Padula v. Lilarn Properties Corp.*, 644 N.E.2d 1001, 1002 (N.Y. 1994).

17.     Applying the two-prong injury here, New Jersey law should apply.  Under the first prong, the undisputed evidence supports that Harrah's has no significant contacts with New York as it is a New Jersey limited liability company operating a casino in New Jersey.[12] On the other hand, both Harrah's and Debtor, through Zambri, have significant contacts with New Jersey.  Zambri frequently gambled at Harrah's[13] and the purported transfers at issue here all took place in New Jersey.[14]  Under the second prong, "[a] fraudulent conveyance statute is conduct regulating rather than loss allocating." *Roselink Inv'rs, L.L.C. v. Shenkman*, 386 F.

---

[12]     SOF at ¶8.

[13]     SOF at ¶9 [*sic*].

[14]     SOF at ¶70.

Supp. 2d 209, 225 (S.D.N.Y. 2004) (citation omitted). And where "regulation of conduct is at issue, the state where the alleged tort took place has the greater interest." *Geron v. Robinson & Cole LLP*, 476 B.R. 732, 738 (S.D.N.Y. 2012), *aff'd sub nom. In re Thelen LLP*, 762 F.3d 157 (2d Cir. 2014). Here, the alleged actions occurred *only* in New Jersey. Accordingly, New Jersey has the more significant—and arguably, only—interest in this matter. Because New Jersey law should apply, the New York state claims cannot be maintained.

**B.** **Debtor's Funds Were Not Transferred to Harrah's.**

18.     Each claim rests on the flawed promise that Debtor transferred an aggregate amount of $859,040.00 to Harrah's.[15] Under the Bankruptcy Code, however, "transfer" is defined as ". . . each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with – (i) property; or (ii) an interest in property." 11 U.S.C. § 101(54)(D). Applied to the undisputed facts here, (1) Harrah's was not substantively involved in the Debtor's transaction; and (2) Harrah's received none of the Debtor's funds.

**1.** **The Transaction.**

19.     Harrah's is not a substantive participant in the cash advance transaction.

- •     Zambri initiates cash advance transaction at Ultron's ATM.[16]

- •     Global Payments obtains authorization from card issuer, Chase.[17]

- •     Global Payments approves the transaction, authorizing Ultron's ATM to dispense a paper receipt to Zambri.[18]

/ / /

---

[15]     *See* Dkt. No. 25, at ¶15.

[16]     SOF at ¶77.

[17]     SOF at ¶63.

[18]     SOF at ¶55.

20536745.2

- Zambri presents Global Payment's authorized receipt to a Harrah's cashier to be redeemed for Harrah's cash,[19] pursuant to the terms of the Global Payments' approved transaction:



**The Transaction**

JVJ's Bank

Request / Approval

Global Payments

Request / Approval

Ultron ATM

Card / Receipt

**The Redemption**

Zambri — Approved Receipt → Harrah's

← Harrah's Cash

Thus, the transaction occurs between Zambri/Debtor, Ultron, and Global Payments. Viewed in totality, the cash advance transaction is completed between Zambri, Ultron, and Global Payments, resulting in an approved receipt redeemable for Harrah's cash.

/ / /

/ / /

/ / /

/ / /

---

[19]     SOF at ¶50-51.

20536745.2

20.     Because the transaction is for all intents and purposes complete when Zambri received the Global Payments' authorized receipt, Harrah's is not substantively involved in the transaction. Harrah's merely is the location from which Zambri used the Ultron ATM; and Harrah's merely redeemed the Global Payments' approved receipt for Harrah's own cash as contractually required.

### 2.     Harrah's Never Received the Debtor's Funds.

21.     Beyond taking no substantive role in the transaction, Harrah's never possessed Debtor's funds. After Harrah's pays its own cash to Zambri, Harrah's is later paid by Global Payments, regardless of whether Global Payments actually received Debtor's funds.[20]

- Global Payments reimburses Caesars for any funds advanced within one to two business days, keeping the charged fees.[21]



- Harrah's redeems approved receipt for cash.[22]

/ / /

/ / /

---

[20]     SOF at ¶37.

[21]     *See* Transcript of Deposition of Ryan Carlson ("**Carlson Trns.**") at 29:3-9 ("Q. And the reimbursement, the timing of that if you could just give me—withdrawn. Could you explain the timing of the reimbursement to Caesars or Harrah's from Global Payments? A. Yes. Generally, it is the one to two business days."). Excerpts of the Transcript of Deposition of Ryan Carlson cited herein are attached as Exhibit 1 of the SOF.

[22]     SOF at ¶64.

- The bank pays Global Payments the entire charged amount.[23]



- At the end of the month, Global Payments pays Caesars the aggregate amount of fees earned during the preceding calendar month.[24]



Thus, none of Debtor's funds were transferred to Harrah's.[25] In fact, Global Payments' obligation to pay Caesars is not tied to Global Payments' receipt of the Debtor's funds. Even in the event a cardholder has insufficient funds, Global Payments must reimburse Harrah's and/or Caesars[26] for the cash advanced. Therefore, the funds transferred to Harrah's (to reimburse Harrah's for its own cash) is Global Payments' funds, not the Debtor's funds.

/ / /

/ / /

/ / /

/ / /

---

23     SOF at Exhibit 1, Carlson Trns., at 28:18-31:8 ("Reimbursement for the cash that was provided is included in a batch settlement that is produced through an ACH based on federal wires. …. Generally, yes. The—it goes through the Visa, Master Card, or whatever card association's process for settling that transaction to the processor.").

24     SOF at ¶40.

25     Moreover, the Debtor's bank statements do not endorse the transfer of funds from Debtor's bank to Harrah's. The notation of "Harrah's AC Atlantic City" identifies the location of Ultron's ATM from which Global Payments approved the transaction with Zambri/Debtor.

26     SOF at ¶37.

20536745.2

### 3. Harrah's Is Not a Transferee.

22.     Harrah's is bound to a contractual relationship with Global Payments to advance Harrah's cash to Ultron's ATM customers in exchange for a small fee from Global Payments. The contractual accommodation fee does not transform Harrah's into a transferee.  *See cf. In re Nat'l Audit Def. Network*, 332 B.R. 896, 913 (Bankr. D. Nev. 2005) (noting that in *Sherman v. First City Bank (In re United Sciences of Am., Inc.*, 893 F.2d 720 (5th Cir.1990), "the court analyzed the credit card relationship as a series of independent transactions knit together by the law of setoff, rather than the interconnected netting of obligations owed by each party to the other governed by the law of recoupment").

23.     Taken together, the Debtor did not transfer $859,040.00 to Harrah's, which is a necessary element of *all* of the claims.  Harrah's provided Zambri its own cash,[27] which was to be repaid by Global Payments funds regardless if Global Payments ever received the Debtor's funds.[28]  Without the transfer of funds from the Debtor to Harrah's, summary judgment in Harrah's favor is warranted.

### C.     If a Transferee, Harrah's Was a Good Faith Subsequent Transferee.

24.     Even if the Debtor's funds were conceivably transferred to Harrah's, Harrah's could only be a subsequent transferee acting in good faith.  Section 550 of the Bankruptcy Code provides that a Trustee cannot recover from a subsequent transferee where "(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or (2) any immediate or mediate good faith transferee of such transferee."  11 U.S.C. § 550(b).  Because the Bankruptcy Code does not define "initial transferee," the Second Circuit has adopted the

---

[27]     SOF at ¶¶50-51.

[28]     SOF at ¶¶37, 40.

20536745.2

"mere conduit" test to determine whether a party is an initial transferee under section 550. *Pergament v. Brooklyn Law Sch.*, 595 B.R. 6, 10 (E.D.N.Y. 2019). "[T]he law in this circuit is that 'an initial transferee must exercise dominion over the funds at issue and be able to put them to 'his own purposes' and that 'a party is not an initial transferee if it was a 'mere conduit' of the funds.'" *Id. (quoting In re Manhattan Inv. Fund Ltd.*, 397 B.R. 1, 14–15 (S.D.N.Y. 2007)).

25.     "A 'mere conduit,' on the other hand, has no dominion or control over the asset; rather, it is a party with actual or constructive possession of the asset before transmitting it to someone else." *In re Warnaco Grp., Inc.*, No. 01 B 41643 (RLB), 2006 WL 278152, at *6 (S.D.N.Y. Feb. 2, 2006). To meet the mere conduit test, "an initial recipient of a debtor's fraudulently-transferred funds must show '(1) that they did not have control over the assets received, i.e., that they merely served as a conduit for the assets that were under the actual control of the debtor-transferor and (2) that they acted in good faith and as an innocent participant in the fraudulent transfer.'" *In re Custom Contractors, LLC*, 745 F.3d 1342, 1349–50 (11th Cir. 2014) *(quoting In re Harwell*, 628 F.3d 1312, 1323 (11th Cir. 2010)).

## 1.     Harrah's Did Not Have Control Over Debtor's Funds.

26.     Even assuming, *arguendo*, that the purported transfers were hypothetically made to Harrah's "[a]s illustrated on the Transfer Schedules and the Debtor's Bank Statements,"[29] Harrah's acted as a mere conduit. Zambri initiated each transaction at an Ultron ATM. For each transaction Zambri initiated at an Ultron ATM, Global Payments approved the transaction, authorizing the ATM to dispense an approved receipt. After receiving the authorized receipt, Zambri went to Harrah's cage to redeem the receipt for cash.[30] When Zambri presented the

---

[29]     *See, e.g.*, Dkt. No. 25, at ¶43.

[30]     SOF at ¶78.

Global Payments receipt at the cage,[31] Harrah's delivered cash to Zambri. Harrah's did not exercise control of the funds; it followed its contractual obligation to redeem the receipt for cash.[32] Harrah's did not retain any of the funds delivered to Zambri. Consequently, Harrah's was at most a mere conduit. *In re Circuit All., Inc.*, 228 B.R. 225, 233 (Bankr. D. Minn. 1998) (citing examples of mere conduits: banks, "real estate escrow and title companies," securities or investment brokers," and "attorneys holding funds in trust in connection with settlements of disputes").

## 2. Harrah's Acted in Good Faith.

27. "To determine whether a transferee acts in good faith, 'courts look to what the transferee objectively 'knew or should have known'' instead of examining the transferee's actual knowledge from a subjective standpoint." *In re Sherman*, 67 F.3d 1348, 1355 (8th Cir. 1995) (citation omitted). If hypothetically construed as a transferee, Harrah's acted in good faith.

28. Harrah's acted in good faith when advancing the funds identified on Global Payments' authorized receipt retrieved by Zambri from the Ultron ATMs. Zambri used the Ultron ATMs on Harrah's property[33] in the exact same manner as every other person at Harrah's property. And, Harrah's honored the transaction in accordance with Harrah's and Caesar's internal policies, State and Federal law, and Global Payment's processing system like

---

[31]     SOF at ¶78.

[32]     Even if Harrah's was in possession of Debtor's funds, Harrah's was **not** in possession of any portion of the fees charged on the transaction. It is undisputed that Global Payments collected the fee while processing the transaction, and then paid Caesars its portion of the fees at the end of the month. SOF at ¶40.

[33]     SOF at ¶¶77-78.

it would for any other person.[34]

29.     The undisputed evidence shows that Harrah's acted in good faith and in accordance with applicable policies and laws.[35]

- Harrah's honored the transaction based on the Global Payments receipt bearing Zambri's name as the "CARD HOLDER."[36]

- Harrah's used the Global Payments system, which authorizes or rejects the transaction, and then processes the authorized transactions.[37]

- Harrah's relied on the Global Payments system to honor each transaction initiated by Zambri.[38]

- No evidence has been presented that the bank card used by Zambri to initiate the cash advances identified Debtor as the owner of the bank account.

- Harrah's verified Zambri's identity to "ensure that the person on the card is the person standing in front of [him or her]."[39]

- Harrah's required Zambri to stamp his fingerprint and sign the Global Payments receipt as required for transactions over $2,000.00.[40]

- Harrah's complied with its reporting duties by electronically reporting each cash advance by filing a currency transaction report with FinCen[41] and making an entry in Harrah's Title 31 Multiple Transactions Log.[42]

/ / /

---

[34]     *See, e.g.*, SOF at ¶¶55-59, 71-72, 76-84.

[35]     SOF at ¶72.

[36]     SOF at ¶80.

[37]     SOF at ¶¶53, 62.

[38]     SOF at ¶77.

[39]     SOF at ¶53.

[40]     SOF at ¶¶60, 79.

[41]     SOF at ¶76.

[42]     SOF at ¶81.

- No evidence has been presented that there was any reason that Harrah's should have been suspicious of Zambri or the transactions.

- Harrah's Know Your Customer representatives could not identify any suspicious activity related to Zambri's gambling.[43]

- Katie Petrosh, Harrah's Director of Compliance Operations, confirmed that there were no issues uncovered after reviewing Zambri's transactions.[44]

By relying on Global Payment's approval and honoring the transactions without any red flags, Harrah's acted in good faith. As a result, this Court should enter judgment in favor of Harrah's because it was not an initial transferee. *See In re Equip. Acquisition Res., Inc.*, 803 F.3d 835, 842 (7th Cir. 2015) (concluding that casino acted in good faith where "[a]lthough Horseshoe had some indication that Player's money came from EAR, it had no reason to suspect that this money was obtained by fraud" as a "transfer of money from a company to one of its executives 'does not hint at a fraudulent conveyance by a firm on the brink of insolvency'" (citation omitted)).

30. Accordingly, because Harrah's did not have control over the Debtor's funds and acted in good faith in advancing the funds pursuant to its contractual obligations with Global Payments, Harrah's was a mere conduit and the Trustee cannot recover.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[43]     SOF at ¶91.

[44]     SOF at ¶92.

**D.      No Evidence Exists to Support the Necessary Element of Intent in the First and Sixth Claims for Relief.**

31.      At the heart of the Trustee's first and sixth claims for relief seeking to recover alleged intentional fraudulent transfers pursuant to section 548(a)(1)(A) of the Bankruptcy Code and DCL Section 276 lies the necessary element that the purported transfers were made by Debtor with the "actual intent to hinder, delay, or defraud its creditors."[45]  Even assuming, *arguendo*, that a transfer from Debtor to Harrah's occurred, no evidence exists to support that the transfers were intentionally fraudulent.  Accordingly, without a necessary element of the claims, judgment in Harrah's favor on the Trustee's first and sixth claims is appropriate.

32.      Fraudulent transfers, either intentional or constructive, are transfers to entities other than creditors, or for which an insolvent company receives less than reasonably equivalent value, and which reduce the assets available to pay creditors as a whole.  For centuries, courts have held that a transfer is intentionally fraudulent when the debtor "intends to hinder and delay [its creditors] as a class." *See, e.g., Van Iderstine v. Nat'l Disc. Co.*, 227 U.S. 575, 582 (1913).

- Section 548(a)(1)(A) of the Bankruptcy Code provides that "[t]he trustee may avoid any transfer … of an interest of the debtor in property, or any obligation … incurred by the debtor, … if the debtor voluntarily or involuntarily made such transfer or incurred such obligation ***with actual intent to hinder, delay, or defraud*** any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

11 U.S.C. § 548(a)(1)(A).

- Similarly, DCL Section 276 provides that "[e]very conveyance made and every obligation ***incurred with actual intent***, as distinguished from intent presumed in law, ***to hinder, delay, or defraud*** either present or future creditors, is fraudulent as to both present and future creditors.

N.Y. Debt. & Cred. Law § 276.

/ / /

---

[45]      *See* Dkt. No. 25, at ¶¶44, 82.

33.     New York courts acknowledge that intent is ordinarily a question of fact which cannot be resolved on a motion for summary judgment; however, summary judgment is proper if no trier of fact could find that the party acted with actual intent. *Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357 (S.D.N.Y. 2003), aff'd, 99 F. App'x 274 (2d Cir. 2004) (dismissing on summary judgment claims brought under DCL Section 276); *see also Krisher v. Monarch Mach. Tool Co.*, 1994 WL 705264, at *3 (N.D.N.Y. 1994) (explaining that an affidavit offering a legitimate business explanation for the acquisition of assets presented "prima facie proof that no fraudulent intent underlay the transaction").

34.     Establishing fraudulent intent is "rarely susceptible to direct proof" and otherwise must be established circumstantially by proof of "badges of fraud," which permit an inference to be drawn that a fraudulent conveyance occurred. *Lippe*, 249 F. Supp. 2d at 374–75; *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 805 (9th Cir. 1994). The "Badges of fraud" factors that may be considered include: "1) gross inadequacy of consideration; 2) a close relationship between transferor and transferee; 3) the transferor's insolvency as a result of the conveyance; 4) a questionable transfer not in the ordinary course of business; 5) secrecy in the transfer; and 6) retention of control of the property by the transferor after the conveyance." *Lippe*, 249 F. Supp. 2d at 375 *(citing BFP v. Resolution Trust Corp.*, 511 U.S. 531, 541 (1994)); *see also Official Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 468–69 (Bankr. S.D.N.Y. 2006) (dismissing those intentional fraudulent transfer claims for which plaintiff failed to adequately tie the badges of fraud to the transaction that plaintiff sought to avoid).

35.     Here, no facts exist that give rise to any inference of fraudulent intent. Indeed, even if the Trustee located transfers from the Debtor to Harrah's, no badges of fraud exist to generate a genuine dispute of material fact as to the Debtor's actual intent to defraud its creditors.

**1.** **No Facts Exist to Establish there was Inadequate Consideration.**

36.     No fact indicates that Harrah's gave the Debtor inadequate consideration, if any, for any alleged transfer, much less grossly inadequate consideration.   In truth, Harrah's advanced $826,000.00[46] to Zambri in accordance with the transaction he conducted at Ultron's ATMs.[47]  In addition to the funds advanced, Harrah's allowed Zambri to gamble at Harrah's[48] and gave Zambri more than $44,500.00 in complimentaries.[49]   Accordingly, there is no evidence of inadequate consideration.

**2.** **Debtor and Harrah's Did Not Enjoy a Close Relationship.**

37.     Debtor and Harrah's do not enjoy a close relationship that would be indicative of fraud.   The facts do not demonstrate any "lack of arms-length" relationship between Harrah's and Debtor.  The relationship here was significantly different from, for example, "the family relationships—a husband conveying property to his wife, for example, or a mother conveying property to her son—one typically sees in fraudulent conveyance cases," nor did any transaction "involve sham or dummy corporations or fictitious parties."  *Lippe*, 249 F. Supp. 2d at 382.  Rather, the evidence reflects that Zambri was simply a frequent customer at Harrah's property.[50]  Zambri gambled[51] and enjoyed complimentaries[52] at Harrah's, occasionally using

---

[46]     SOF at ¶¶55-59, Ex. 7.   This amount was calculated by adding the "CHECK AMOUNT" listed on the Player @dvantage Receipts attached to the SOF as Exhibit 7.

[47]     SOF at ¶72.

[48]     SOF at ¶¶89-90.

[49]     SOF at ¶9 [*sic*].

[50]     SOF at ¶9 [*sic*].

[51]     SOF at ¶¶86-88.

[52]     SOF at ¶¶89-90.

the Ultron ATM's to initiate the cash advance transaction for approval from Global Payments.[53] No reasonable juror could conclude that any party engaged in fraud solely due to the relationship that existed between Harrah's and Debtor.

### 3. Any Purported Transfers Were Made in the Ordinary Course of Business.

38.    Any hypothetical transfer occurred in the ordinary course of business. The undisputed evidence shows that Zambri accessed Ultron's ATMs on Harrah's property in the exact same manner as every other person at Harrah's property.[54] Harrah's honored Global Payment's processing system to advance the funds requested by Zambri at Ultron's ATMs and as identified on the Global Payments' authorized receipts, just as Harrah's would for any other person.[55] Then, Harrah's reported the exchanges pursuant to Harrah's and Caesar's internal policies and State and Federal law.[56] Consequently, this badge of fraud is not present as Harrah's honoring of the Global Payments' authorized receipt was an ordinary business practice.

### 4. Any Purported Transfer Was Not Made in Secret.

39.    There is no evidence of any secret transfer. The facts developed during discovery reveal that Harrah's kept extensive records related to Zambri's cash advance transactions at the Ultron ATMs and reported each exchange (Harrah's cash for the Global Payments' authorized receipt) pursuant to Federal law.[57] Put simply, the badges of fraud do not exist in the hypothetical transactions: (1) Harrah's provided adequate consideration for any

---

[53]    SOF at ¶71.

[54]    SOF at ¶¶77-78.

[55]    *See, e.g.*, SOF at ¶¶55-59, 71-72, 76-84.

[56]    *See, e.g.*, SOF at ¶¶55-59, 71-72, 76-84.

[57]    SOF at ¶¶76-92.

21

purported transfer, (2) no special relationship existed between Debtor and Harrah's, (3) Harrah's honored the Global Payments' approved cash advances, which was done in the ordinary course of business, and (4) no transaction was done in secret.

40.     Taken together, there is no evidence to raise an inference of an intent to defraud. Accordingly, the Court should grant summary judgment in favor of Harrah's with respect to the first and sixth claims.

### E.     The Debtor Received Fair Consideration and Reasonably Equivalent Value.

41.     The evidence fails to establish a crucial element of the third, fourth, and fifth claim for relief seeking to recover alleged transfers pursuant to DCL Sections 273, 274, and 275. Namely, that the "Debtor did not receive fair consideration" in exchange for the purported transfers.[58] Relatedly, the evidence fails to establish the necessary element of the second claim for relief: that the "Debtor did not receive reasonably equivalent value" in exchange for the purported transfers.[59]  As courts have noted, "fair consideration" under the DCL and "reasonably equivalent value" under section 548(a)(1)(B) "have the same fundamental meaning . . . and are interpreted similarly by the courts." *Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortgage Inv. Corp.)*, 256 B.R. 664, 677 (Bankr. S.D.N.Y. 2000) (citing cases).

- Section 548(a)(1)(B) of the Bankruptcy Code provides that "[t]he trustee may avoid any transfer … of an interest of the debtor in property, or any obligation … incurred by the debtor, … if the debtor voluntarily or involuntarily . . . ***received less than a reasonably equivalent value in exchange for such transfer or obligation***; and . . . made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

/ / /

/ / /

---

[58]     *See* Dkt. 25, at ¶¶65, 70, and 76.

[59]     *See* Dkt. 25, at ¶¶45, 57, 83, and 97.

22

11 U.S.C. § 548(a)(1)(B)(ii) (emphasis added).

- Section 273 of the Debtor and Creditor Law provides that "[e]very conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is ***incurred without a fair consideration.***"

N.Y. Debt. & Cred. Law § 273 (emphasis added).

- Section 274 provides that "[e]very conveyance ***made without fair consideration*** when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent … without regard to his actual intent."

N.Y. Debt. & Cred. Law § 274 (emphasis added).

- Section 275 provides that "[e]very conveyance made and every obligation ***incurred without fair consideration*** when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors."

N.Y. Debt. & Cred. Law § 275 (emphasis added).

Imperatively, fair consideration is given for property, or obligation:

a. When in exchange for such property, or obligation, as a ***fair equivalent*** therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or
b. When such property, or obligation is received ***in good faith*** to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

N.Y. Debt. & Cred. Law § 272 (emphasis added). "[I]t is clear that DCL Section 272 means what it says: in contrast to its status in *actual* fraudulent conveyance jurisprudence, '*good faith*' on the part of the transferee is an element of a constructive fraudulent conveyance claim." *Pergament as Tr. of Estate of Barkany v. Marina Dist. Dev. Co., LLC*, 14 CV 2602 (RJD), 2018 WL 5018654, at *13 (E.D.N.Y. Oct. 15, 2018) (citing *Sharp Int'l Corp. v. State Street Bank & Trust Co.*, 403 F.3d 43, 53, 54 n.4 (2d Cir. 2005)).

/ / /

/ / /

42.     The Bankruptcy Code lacks a precise definition of "reasonably equivalent value."  It does, however, define the term "value" as "property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor." 11 U.S.C. § 548(d)(2)(A).  Courts generally take a totality of the circumstances approach to define reasonably equivalent value.  A common test used by courts is to consider "the totality of the circumstances, including (1) the fair market value of the benefit received as a result of the transfer, (2) the existence of an arm's-length relationship between the debtor and the transferee, and (3) the transferee's good faith." *In re Mercury Companies, Inc.*, 527 B.R. 438, 447 (D. Colo. 2015) (*quoting In re Fruehauf Trailer Corp.*, 444 F.3d 203, 213 (3d Cir. 2006)); *In re Gonzalez*, 342 B.R. 165, 173 (Bankr. S.D.N.Y. 2006).

**1.     Debtor Received the Fair Market Value of the Cash Advances.**

43.     "If the debtor receives value that is so low that it shocks the conscience, then the transfer is presumptively less than reasonably equivalent value."  *In re Gonzalez*, 342 B.R. at 173.  Further, "the fair market value received by the debtor need not be a penny for penny exchange," as it need only be "'roughly" the value of the transfer made." *Id.*  If the Debtor received adequate consideration, no fraudulent transfer can be found to have occurred.  *See, e.g., Schaps v. Just Enough Corp. (In re Pinto Trucking Service, Inc.)*, 93 B.R. 379, 385 (Bankr. E.D. Pa. 1988) (stating that no fraudulent conveyance occurred where debtor received adequate and fair compensation for sale even where debtor did become insolvent as a result of transfer); *Seidle v. Van de Grift (In re 18th Ave. Development Corp.)*, 18 B.R. 904, 905 (Bankr. S.D. Fla. 1982) (concluding that evidence that transferor received a fair value was sufficient to show no fraudulent conveyance).

/ / /

/ / /

44.     Here, assuming, *arguendo*, that Debtor transferred funds to Harrah's, the evidence shows that Debtor received the fair market value of the cash advances. Indeed, Zambri withdrew an aggregate amount of $859,040.00 from Debtor's account.[60] Of that amount, Harrah's advanced $826,000.00[61] of it almost immediately to Zambri in accordance with the cash advance transaction at an Ultron's ATM.[62] In other words, the Debtor received the value of approximately **96% of the withdrawn funds almost immediately**. Of the remaining funds withdrawn from Debtor's account, which consists of the 4% fee charged by Global Payments for processing the cash advance to which Zambri consented,[63] Harrah's only received less than 75% of the 4% fee from Global Payments.[64] *See Guitierrez v. Lomas Mortgage (In re Gutierrez)*, 160 B.R. 788, 791 (Bankr. W.D. Tex. 1993) (concluding that purchase at 70% of value was insufficient, without other badges of fraud, to prove fraudulent conveyance).

45.     In addition to almost immediately receiving approximately 96% of the withdrawn funds, the Debtor received the following value: (1) the ability to access funds virtually on demand by using a bank card bearing Zambri's name,[65] (2) the opportunity to gamble at Harrah's, which opportunity Zambri exercised, winning approximately $488,455.00

---

[60]     *See* Dkt. No. 25, at ¶15.

[61]     SOF at ¶¶55-59, Ex. 7. This amount was calculated by adding the "CHECK AMOUNT" listed on the Player @dvantage Receipts attached to the SOF as Exhibit 7.

[62]     SOF at ¶72.

[63]     SOF at ¶59-61, 79.

[64]     SOF at ¶39, 43-46, 55-59.

[65]     SOF at ¶80.

in 2015,[66] and (3) the enjoyment of more than $44,500.00 worth of complimentaries, which included more than $27,000.00 in stays, $14,000.00 in meals, and $3,500.00 in entertainment and other benefits.[67]  Thus, Harrah's provided fair market value of the cash advances.

46.     Moreover, even if the Debtor did not directly receive the benefit of any purported transfer because Zambri later gambled the withdrawn funds at Harrah's property, reasonably equivalent value was still exchanged.  *See, e.g., Allard v. Flamingo Hilton (In re Chomakos)*, 69 F.3d 769, 772 (6th Cir. 1995) (holding that the legal gambling provided reasonably equivalent value because it was a form of an investment and the debtor received entertainment and other intangible values by gambling comparable to dining at a fine restaurant); *Bohm v. Dolata (In re Dolata)*, 306 B.R. 97, 143 (Bankr. W.D. Pa. 2004) (holding that a gambling loss of over $42,500 could not be recovered as a fraudulent transfer because gambling gave the debtors a right to money if the gambling was successful).

47.     Accordingly, because the Debtor received the fair market value of the cash advances, the Court should grant summary judgment in favor of Harrah's.

**2.     Debtor and Harrah's Enjoyed an Arm's-Length Relationship.**

48.     As established in Section III.D.2. above, there was an arm's-length relationship between the Debtor and Harrah's. The facts do not demonstrate any "lack of arms-length" relationship between Harrah's and Debtor.  Zambri was a frequent customer at Harrah's property, no more and no less.[68] Zambri gambled[69] and enjoyed complimentaries[70] at Harrah's,

---

[66]     SOF at ¶¶86-88.

[67]     SOF at ¶¶89-90.

[68]     SOF at ¶9 [*sic*].

[69]     SOF at ¶¶86-88.

[70]     SOF at ¶¶89-90.

and occasionally initiated cash advances from Ultron's ATMs—just the same as untold thousands of other persons.[71] No special relationship between Debtor and Harrah's exists.

### 3. Harrah's Acted in Good Faith.

49. As set forth above in Section III.C.2., Harrah's acted in good faith. Harrah's acted in good faith by relying on Global Payment's system approving the transactions and by obtaining the necessary information from Zambri, verifying Zambri's identity, securing Zambri's signature and thumb stamp.[72] Zambri's transactions did not raise any red flags with Harrah's compliance and review organizations.[73]

50. Thus, reasonably equivalent value or fair consideration were exchanged for the cash advances. As a result, this Court should enter judgment on the Trustee's claim for relief in Harrah's favor.

### F. The Trustee Cannot Establish the Necessary Elements of Unjust Enrichment.

51. Harrah's did not receive a benefit of any purported transfer, which is a necessary element of the Trustee's seventh claim for relief. Accordingly, judgment in Harrah's favor as to these claims is appropriate.[74]

/ / /

---

[71] SOF at ¶71.

[72] SOF at ¶¶76, 78-79, 81.

[73] SOF at ¶¶91-92.

[74] As established in Section IV.A. above, New Jersey law should apply as the purported transfers occurred in New Jersey at a New Jersey casino. Nevertheless, the Trustee's claims fail under both New Jersey and New York common law. *Hettinger v. Kleinman*, 733 F. Supp. 2d 421, 447 (S.D.N.Y. 2010) ("I do not engage in an independent choice of law analysis with respect to this claim for unjust enrichment because there is no difference between the law of the two interested jurisdictions-New York and New Jersey." (citing *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F.Supp.2d 729, 733–34 (D.N.J.2008); *RCM Tech., Inc. v. Constr. Servs. Assocs., Inc.*, 149 F.Supp.2d 109, 114 (D.N.J.2001))).

27

52.     In order to assert a claim for unjust enrichment, there must be "proof that (1) defendant was enriched, (2) at [Debtor's] expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004); *see also Assocs. Commercial Corp. v. Wallia*, 511 A.2d 709, 716 (N.J. App. Div. 1986).  "[T]o prove an unjust enrichment claim more is required than simply showing that one party received a benefit that the enrichment must be such that in equity and good conscience its retention would be unjust and to determine whether there has indeed been unjust enrichment the inquiry must focus on the 'human setting involved' not merely upon the transaction in isolation." *Mayer v. Bishop*, 158 A.D.2d 878, 880 (N.Y.S. 1990) (internal citations omitted).

53.     In this instance, in order to plead a valid claim of unjust enrichment, Harrah's must have been enriched at the expense of Debtor.  Harrah's did not retain any funds; Harrah's advanced its own funds to Zambri.  The contractual fee Harrah's received, moreover, was paid from Global Payments' funds unrelated to Debtor's funds regardless if Global Payments ever received the Debtor's funds.[75]  Even further, Debtor received fair market value for the cash advances and additional benefits, such as thousands of dollars' worth of complimentaries to Debtor's President.[76]  *See In re Akanmu*, 502 B.R. 124, 138 (Bankr. E.D.N.Y. 2013) (concluding that where the "Defendants received tuition payments from the Debtors" in exchange for educating the Debtors' children, "the transferee is not liable on an unjust enrichment claim" because "the transferor received a benefit").  Indeed, Harrah's merely acted in good faith and in conformance with its contractual obligations to Global Payments.

/ / /

---

[75]     SOF at ¶¶37, 40.

[76]     SOF at ¶¶89-90.

20536745.2

54.     Because the undisputed evidence shows that Harrah's merely honored the cash advance transaction conducted by Zambri at the Ultron ATMs pursuant to Harrah's contractual obligations with Global Payments and did not retain any of the Debtor's funds, the Court should conclude that Harrah's was not unjustly enriched at the expense of the Debtor.

## V.     <u>CONCLUSION.</u>

55.     No genuine issue of material fact remains for trial.  The cash advances Zambri conducted at Ultron's ATM, which produced an authorized receipt from Global Payments redeemed for Harrah's cash are not avoidable and/or recoverable from Harrah's.  The admitted facts, deposition transcripts, and plain text of the produced documents defeat the claims. With no demonstrable genuine issue of material fact, Harrah's requests this Court grant summary judgment against each of the claims, dismiss this case in its entirety, and grant all such further relief as is necessary and just.

Dated this 10th day of April, 2020

**GRIFFIN HAMERSKY LLP**

 */s/ Scott A. Griffin*
420 Lexington Avenue, Suite 400
New York, New York 10170
Telephone: (646) 998-5580
Facsimile:  (646) 998-8284
Scott A. Griffin
Michael D. Hamersky

**BROWNSTEIN HYATT FARBER
SCHRECK, LLP**
100 North City Parkway, Suite 1600
Las Vegas, Nevada  89106
Telephone:  702.382.2101
Facsimile:  702.382.8135
Frank M. Flansburg III
*(Pro Hac Vice Admission)*
Maximilien D. Fetaz
*(Pro Hac Vice Admission)*

*Attorneys for Harrah's Atlantic City
Operating Company LLC d/b/a Harrah's
Resort Atlantic City*

20536745.2

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was sent electronically via the Court's CM/ECF system on April 10, 2020, to the following:

David A. Blansky, Esq.
La Monica Herbst & Maniscalco, LLP
3305 Jerusalem Avenue, Suite 201
Wantagh, NY 11793
Email: dab@lhmlawfrm.com

Jordan David Weiss
Meyer, Suozzi, English & Klein, PC
990 Stewart Avenue, Ste 300
Garden City, NY 11530
Email: jweiss@msek.com

*Attorneys for Plaintiff*

I hereby certify that a true and correct copy of the foregoing was sent via U.S Regular on April 10, 2020, to the following:

The Honorable Stuart M. Bernstein
United States Bankruptcy Court for the Southern District of NY
One Bowling Green
New York, NY 10004-1408

*/s/ Michelle Tuason*
Michelle Tuason, an Employee of
Brownstein Hyatt Farber Schreck, LLP

20536745.2